**Jackie T. LANE, Plaintiff,**

v.

**DAVID P. JACOBSON & COMPANY, LTD., and Howard Jacobson, Defendants.**

Civ. A. No. 2:94CV1101.

United States District Court, E.D. Virginia, Norfolk Division.

March 22, 1995.

---

Henry Evans Howell, III, Virginia Beach, VA, for plaintiff.

Linda S. Laibstain, Hofheimer, Nusbaum, McPhaul & Samuels, Norfolk, VA, for defendants.

## OPINION AND ORDER

MILLER, United States Magistrate Judge.

Plaintiff Jackie T. Lane has filed a seven-count complaint against defendants David P. Jacobson & Company ("the Company") and Howard Jacobson. The complaint includes two federal law claims and five state law claims: (1) sexual harassment under Title VII, (2) constructive discharge under Title VII, (3) wrongful termination, (4) intentional infliction of emotional distress, (5) assault

and battery, (6) insulting words, and (7) breach of contract.

This matter comes before the Court on two motions to dismiss, one filed individually by Howard Jacobson, and the other filed jointly by David P. Jacobson & Company, Ltd. (the Company) and Howard Jacobson.

All the parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. After a review of the memoranda submitted by the parties, and the applicable statutory and case law, the Court GRANTS both motions to dismiss.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Jackie T. Lane worked as a sales representative for a family-owned business located in Norfolk, David P. Jacobson & Company, from 1989 to 1993. The Company specializes in screenprinting and embroidery of t-shirts, sweatshirts, and other items, and does custom designing for a wide range of clients around the country. Lane's responsibilities included soliciting clients, both over the phone and in person.

In her complaint, Lane alleges that she was subjected to a barrage of offensive and abusive conduct and statements regarding both sexual topics and her physical appearance by Howard Jacobson, the president of the Company, and Tan Vo, an employee of the Company. Lane claims that as a result of the abusive conduct of these two individuals she left the Company.

Lane brought this action seeking compensation for these alleged incidents. Both defendants, the Company and Howard Jacobson, have moved to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff Lane filed the original complaint on November 14, 1994, and both defendants filed these motions to dismiss in lieu of answers with accompanying memoranda in support on December 19, 1994. Plaintiff filed memoranda in opposition to the two motions to dismiss on January 11, 1995, and both defendants filed reply memoranda on January 24, 1995.

The undersigned heard oral arguments on this matter on February 9, 1994.

## II. *STANDARDS FOR A MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)*

 A motion to dismiss for lack of subject matter jurisdiction may attack the complaint on its face, in that the complaint fails to allege facts upon which the court can base jurisdiction, or it may attack the truth of the underlying jurisdictional allegations contained in the complaint. The party asserting subject matter jurisdiction has the burden to allege and prove such jurisdiction. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). In a facial attack, the court assumes all the facts in the complaint are true, thus providing the plaintiff with the same procedural protections as a Rule 12(b)(6) determination. *Id.*

 In a challenge to the underlying allegations of the complaint, the court may consider evidence outside of the complaint to determine whether sufficient facts support the jurisdictional allegations. The court may "consider evidence by affidavit, depositions or live testimony." *Id.* (citing *Mims v. Kemp,* 516 F.2d 21 (4th Cir.1975)). Thus, unlike the procedures for a 12(b)(6), which reserves "the truth finding role for the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams,* 697 F.2d at 1219; *see also Thigpen v. United States,* 800 F.2d 393, 396 (4th Cir.1986) ("a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion"). In fact, "the nature of jurisdiction requires that courts establish in fact, rather than assume blindly, their power to hear a dispute." *Thigpen,* 800 F.2d at 396.

 In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept the facts pleaded by the plaintiff as true. The claim should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claims which would

entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *cf. Bruce v. Riddle,* 631 F.2d 272, 273–74 (4th Cir.1980). The complaint must be liberally construed in favor of the plaintiff, even if it appears that "recovery is remote and unlikely." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In ruling on a 12(b)(6) motion, the court can only rely upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery County Police Officers,* 762 F.2d 30, 31 (4th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

■ In deciding a 12(b)(6) motion, the court accepts the factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.,* 991 F.2d 94 (4th Cir.1993).

With these controlling principles in mind, the Court turns to the merits of the motions.

### III. *ANALYSIS*

A. *Defendant Howard Jacobson's Motion to Dismiss*

1. *Individual liability under Title VII*

■ Defendant Howard Jacobson argues that Title VII does not permit the imposition of personal liability on supervisors but only on employers, and urges dismissal under Rule 12(b)(1) on this basis.

Title VII refers to an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b) (1988) (emphasis added). Plaintiff looks to the emphasized language in the statute as support for her federal claims against Howard Jacobson.

Although several cases have allowed plaintiffs to pursue individuals based on this phrase in Title VII, *see, e.g., Harvey v. Blake,* 913 F.2d 226 (5th Cir.1990); *House v. Cannon Mills, Co.,* 713 F.Supp. 159 (M.D.N.C.1988), other courts have held that the use of this language merely ensures that the acts of individuals are imputed to the employer through respondeat superior, and is not intended to provide for a remedy against the actual individual wrongdoers. *See, e.g., Miller v. Maxwell's Int'l,* 991 F.2d 583 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

A recent district court opinion from the Western District of Virginia has rejected liability premised upon the same theory, relying on language in a recent Fourth Circuit decision.

In *Ellers v. ITT Corp., Electro–Optical Division, et al.,* Civil Action Number 94–0420–R (Memorandum Opinion, W.D.Va. Nov. 11, 1994), the court determined that a supervisor could not be found individually liable under Title VII. The court in *Ellers* looked to *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.1994) for support. In *Birkbeck,* the Fourth Circuit rejected a claim brought under the Age Discrimination in Employment Act (ADEA) against a supervisor under an identical theory. The court in *Birkbeck* determined that the use of the term "agent" in the definition of "employer" under the ADEA did not create individual liability, but instead merely reiterated the principle of respondeat superior.

Although *Birkbeck* interpreted the ADEA and not Title VII, the relevant language in both statutes is identical. In fact, as support for its rejection of the ADEA claim, the Fourth Circuit cited *Miller,* 991 F.2d at 583, a case in which the Ninth Circuit rejected a claim for individual liability under Title VII. The court in *Ellers* concluded that "[g]iven the [*Birkbeck* ] court's reliance on Title VII cases and the recognized similarities of the statutory schemes ... the *Birkbeck* holding should apply to this case. The 'agency' principle in § 2000e(b) can create civil liability only for [the individual defendant's] employer." *Ellers,* 9–0420–R at 4.

Therefore, although *Birkbeck* interpreted the term "employer" in the ADEA, the court in *Ellers* looked to the reasoning in the *Birkbeck* decision as powerful support for denying individual liability under both Title VII and the ADEA. Although the holding of the

Fourth Circuit was not founded on the Title VII language, the clear implication of the decision in *Birkbeck* was that the Fourth Circuit does not support individual liability for agents of employers under Title VII.

Plaintiff's response is based primarily on an argument about what the law should be. While the law review articles she cited for support might portend the future, the cases in this circuit have not found in her favor. And, as defendant pointedly noted, Congress has had ample time to correct any ambiguity in the statute.

Thus, the Court GRANTS defendant Howard Jacobson's motion to dismiss for lack of subject matter jurisdiction on the Title VII claims.

### 2. Prefiling requirements for Title VII claims

Defendant argues that plaintiff has failed to complete the required prefiling formalities for the commencement of a Title VII action. Although plaintiff did file an administrative Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) on December 21, 1993, and subsequently received a Right-to-Sue letter on August 30, 1994 from that agency, plaintiff listed only the corporate entity in this document, and not the individual defendant named in this lawsuit.

█ One jurisdictional prerequisite to bringing an action under Title VII is the filing of a charge with the EEOC naming the defendant(s) as respondent(s). 42 U.S.C. § 2000e–5(f)(1). Failure to do so is proper grounds for dismissal of the claim against the unnamed defendant. *See Mickel v. South Carolina State Employment Service*, 377 F.2d 239, 242 (4th Cir.), *cert. denied,* 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967); *Harris v. Norfolk & W.R. Co.,* 720 F.Supp. 567, 569 (W.D.Va.1989); *but see Boyce v. Fleet Finance, Inc.,* 802 F.Supp. 1404, 1411 n. 14 (E.D.Va.1992) (finding that the naming requirement is subject to equitable consider-

ations, and therefore allowing a claim against an unnamed individual).

Plaintiff cites a number of cases in response, arguing that the purpose of the EEOC procedures is to put a defendant on notice, and that Harold Jacobson was certainly on notice of the claim in this case. Only one of the cases cited by the plaintiff was authored by the Fourth Circuit, and it was not directly on point.

Because the fate of the Title VII claims against defendant Howard Jacobson has been sealed by the Court's determination above that he is not a proper defendant under the language of the federal statute, the Court chooses not to resolve the issue regarding whether this defendant was properly identified in the EEOC Charge.

### 3. Survival of the state claims

█ While this Court does not lack the capacity to entertain the state claims in the absence of an anchoring federal claim, there is little to recommend that we hear these claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Sigmon v. Poe,* 564 F.2d 1093, 1096 (4th Cir.1977); 28 U.S.C. 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction").

In arguing for dismissal on this basis, defendant does not concede the argument that the state claims fail the "common nucleus of operative fact" test for supplemental jurisdiction. In fact, defendant makes this argument explicitly for the breach of contract claim.

Plaintiff responds by arguing that we can and should still exercise supplemental jurisdiction over this individual defendant even if the Title VII claims fail against him. Plaintiff relies (erroneously) on *Martin v. Cavalier Hotel Corp. et al.,* No. 93cv163 (E.D.Va. Apr. 21, 1994), *aff'd,* Nos. 94–1600, 94–1666, 1995 WL 97339 (4th Cir. Mar. 10, 1995).[1]

---

1. In *Martin,* a jury found both the Hotel and the Hotel's general manager liable to the plaintiff. The court reviewed the jury's actions on a Rule 50(b) motion. Notably, the liability for construc- tive discharge in violation of Title VII attached only to the Hotel. *Id.* at 4. Therefore, this case certainly does not stand for the proposition that supervisors can be liable under Title VII.

### a. *Failure to state a claim for (3) wrongful termination, (6) insulting words, and (7) breach of contract*

#### i. *Wrongful termination*

Defendant Howard Jacobson argues that there is no liability under the Virginia claim unless there is an employment relationship between defendant and plaintiff. Plaintiff disagrees, pointing to *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985) as support for the position that a party can maintain a wrongful termination action against both the direct employer and others. In *Bowman*, the Virginia Supreme Court first recognized the cause of action for wrongful discharge as a narrow exception to the general doctrine of employment-at-will. In *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 439 S.E.2d 328 (1994), the Virginia Supreme Court recognized that employment discrimination based on race was a sufficient breach of public policy to allow a claim for wrongful discharge.

The decision in *Bowman* found liability against both the bank and the bank's directors. Due to the absence of a clear rule on whether one other than the direct employer can be found liable for wrongful discharge, and this Court's decision not to exercise jurisdiction over the supplemental claims, this Court chooses not to decide the fate of this claim.

#### ii. *Insulting words*

■ Under Virginia Code section 8.01–45, [a]ll words shall be actionable which from their usual construction and common acceptance are construed as insult and tend to violence and breach of the peace. Defendant contends that the complaint fails to state a claim under this statute. The only direct allegation in the complaint is that the defendant called Lane "fat." The complaint also alleges "offensive and derogatory statements of a sexual nature." Compl. ¶ 61.

Under the plain language of the statute, the words that form the basis for the claim must be both (1) insulting, and (2) intended to cause violence and breach of the peace. While Lane's complaint does contain a conclusory statement about the second element, there is no evidence or statement that satisfies the requirement that the words addressed to Lane were intended to cause violence or breach of the peace. Therefore, this claim is DISMISSED.

#### iii. *Breach of contract*

There is no contract between the plaintiff and defendant Howard Jacobson. Plaintiff concedes this point, and does not oppose dismissal of this claim.

### 4. *Conclusion*

The Court GRANTS defendant Howard Jacobson's motion to dismiss both federal claims under Rule 12(b)(1). Further, the Court GRANTS this defendant's motion to dismiss the state law claims alleging insulting words and breach of contract. The court chooses not to exercise supplemental jurisdiction over the remaining claims against defendant Howard Jacobson, namely (3) wrongful termination, (4) intentional infliction of emotional distress, and (5) assault and battery.

### B. *Defendants' Joint Motion to Dismiss*

#### 1. *Jurisdiction under Title VII: Was plaintiff an employee or an independent contractor?*

■ As a general rule, Title VII only protects employees, and not independent

---

Even more notably, plaintiff's reliance on the case for the proposition that a court can maintain supplemental jurisdiction over state law claims against one defendant when the court has original jurisdiction over the matter with regard to a second defendant is misplaced.

In *Martin*, the original complaint contained a total of twelve counts. Six of these counts fell on defendant's motion for summary judgment at the close of the trial. Of the remaining six, the jury found liability on three, including the Title VII claim against the Hotel. *Id.* at 4. The court's opinion focuses on these three claims, and does not address the jurisdictional aspect of the case. Thus it is not at all clear that the court in *Martin* allowed the individual defendant to remain in the case based solely on supplemental jurisdiction. There is insufficient evidence in the opinion to determine the basis for the court's subject matter jurisdiction over the individual defendant.

In short, *Martin* does not appear to provide support for plaintiff's argument that the state claims against Howard Jacobson should remain in federal court.

contractors. *See, e.g., Spirides v. Reinhardt,* 613 F.2d 826, 828 (D.C.Cir.1979). Defendants argue that Lane was an independent contractor during her tenure at the Company, and that she is therefore precluded from recovering under Title VII; on this basis, they seek dismissal of both Title VII claims under Rule 12(b)(1). Plaintiff argues that she was an employee of the Company, and, therefore, that the mandates of Title VII apply to this case.

Both sides agree that the controlling standards for distinguishing between employees and independent contractors are contained in *Haavistola v. Community Fire Co. of Rising Sun,* 6 F.3d 211 (4th Cir.1993) and *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979 (4th Cir. 1983).

■■■ The Fourth Circuit uses the so-called hybrid "economic realities/right of control" test to decide whether a plaintiff in a Title VII action is an employee or an independent contractor. As stated in *Garrett,*

whether an individual is an employee ... is properly determined by analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called "economic realities" test first announced in *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947).

*Id.* at 981. Further,

[C]ontrol is still the most important factor to be considered, but it is not dispositive. Other important considerations include: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 982 (citations omitted). While the court's focus in *Haavistola* was on whether a volunteer could be considered an employee under Title VII, the court referred back to *Garrett,* noting that "our decision in *Garrett* ... guides the analysis when compensation is evident and an independent contractor status is at issue." *Haavistola,* 6 F.3d at 219. Thus, although *Garrett* was decided under the ADEA, the court in *Haavistola* again recognized the similarities between these two federal statutes: "Although [in *Garrett* ] we were construing the definitions of 'employee' and 'employer' under the Age Discrimination in Employment Act, the operative language in the ADEA is identical to the operative language in Title VII, so the analysis utilized under either act is interchangeable." *Id.* at 219. The plaintiff and the defendants differ on application of this test to the facts. Both sides have presented evidence by affidavit and exhibit.

■■■ Defendants' evidence reveals the following: (1) Lane was paid strictly on a commission basis; (2) The Company issued 1099 tax forms to Lane, not W-2s, and did not withhold any taxes; (3) Lane received no leave time from the Company; (4) Lane paid her own expenses; (5) Lane was not eligible for unemployment benefits or workers' compensation; (6) Lane did not receive any profit-sharing; (7) Lane was required to pay the entire premium for Company-sponsored health insurance; (8) Lane was free to solicit customers for other businesses as long as she did not work for direct competitors of the Company; (9) Lane worked from other locations in addition to her desk at the Company; (10) Lane set her own schedule; (11) Lane worked for the Company for roughly four years; (12) Lane worked for at least one other company at the same time as she worked for the Company.

Plaintiff's evidence supports the following: (1) Lane was required to report to supervisors at the Company on a daily basis; (2)

Supervisors would critique and control communications and contact with customers and potential customers by Lane; (3) Lane was required to seek permission from supervisors to be absent from the office; (4) Lane's supervisors made remarks to her regarding the requirement that she follow their directives because they were "the boss."

Two specific facts remain contested: (1) Lane's title was "Director of Special Projects," but it is in dispute whether this title was given by the Company or self-appointed; (2) The Company claims that it fired Lane; her version is that she stopped working at the office when the situation at the office became intolerable, but remained as an independent contractor from this point until she received the letter of termination from the Company. In addition, a matter in general dispute is the degree of control exerted over Lane. The affidavits evidence some distance between the parties' versions of the interactions between Lane and her supervisors.

Applying the factors set out in *Garrett*, 721 F.2d at 982, the Court makes the following observations. First, a job involving sales is frequently one undertaken by independent contractors. For instance, in *Knight v. United Farm Bureau Mut. Ins. Co.*, 742 F.Supp. 518 (N.D.Ind.1990), sales representatives for insurance companies were classified as independent contractors. Second, the skills required of a salesperson are often specialized, and therefore conducive to work as an independent contractor. Third, although Lane did make use of a desk at the Company, she purchased her own supplies to use in soliciting customers. Fourth, the method by which Lane was compensated, a straight commission basis, is indicative of an independent contractor relationship. Fifth, the limited employee benefits received by Lane from the Company, especially when contrasted with the benefits received by true employees of the Company, indicate an independent contractor relationship. Sixth, the fact that Lane received tax forms typically given to independent contractors, and that she described herself as self-employed on her own tax form, strongly suggest that the intention of both parties was to treat Lane as an independent contractor.

Taking into account all of the evidence presented by the parties, this Court must conclude that Lane was an independent contractor, not an employee, of the Company. The Court reaches this decision based on a close examination of the affidavits and other evidence presented. Of particular importance were the facts that Lane worked for at least one other company during her tenure at the Company, and that she described her occupation as "SELF SALES" on both her 1991 federal and state income tax forms.

The degree of control exercised over Lane is no more than would be used for any other independent contractor performing a task for a business; no one can deny the need for at least some directions or commands from the party hiring the independent contractor. *See, e.g., Knight*, 742 F.Supp. at 523.

In reaching the conclusion that Lane is not an employee as that term is used in Title VII, the Court is particularly mindful of the decisions in *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982), and in *EEOC v. Alford*, 142 F.R.D. 283 (E.D.Va.1992), in which the courts determined that discovery is necessary before a jurisdictional issue of this nature can be resolved in a Title VII case.

In *Alford*, the defendant in a Title VII case moved to dismiss on the grounds that the defendant was not an "employer" under the statute because the defendant did not employ the requisite number of employees. Defendant made this motion prior to any discovery, and the court determined that the facts surrounding this jurisdictional question were not sufficient to render a decision.

In the instant case, the plaintiff did not move to postpone the hearing in order to obtain additional discovery. In response to a question posed by the Court at oral argument about whether additional discovery would prove illuminating in this case, the plaintiff said yes, but was unable to point to specific discovery that might yield helpful information. As the court stated in *Alford:*

> The dispositive nature of a Rule 12(b)(1) challenge to the underlying jurisdictional facts requires the court to satisfy itself that the record has been fully developed before deciding the motion.

**1100**

*EEOC v. Alford,* 142 F.R.D. at 286. This court is satisfied that the record is fully developed on the specific issue of whether Lane was an employee.

Indeed, after reviewing the information presented, and hearing oral argument on this issue, the Court is of the opinion that additional discovery would not prove helpful in determining the independent contractor-employee issue.

On the ground that this Court lacks subject matter jurisdiction over the two Title VII claims because plaintiff is not an employee of the Company, this Court GRANTS defendants' joint motion to dismiss under Rule 12(b)(1).

### 2. *Survival of the state claims*

Defendants make the same argument as in Section A(3), that this Court should dismiss the state claims if it dismisses the federal claims.

#### a. *Failure to state a claim for (6) insulting words*

Presumably this motion pertains only to the Company—defendant Howard Jacobson has already moved to dismiss this claim in the prior motion. The analysis of this claim is the same as in Section A(4)(b). The motion to dismiss this claim against the Company is GRANTED.

### 3. *Conclusion*

The Court GRANTS the joint motion to dismiss the Title VII claims under Rule 12(b)(1) because Lane is an independent contractor and not an employee. The Court also grants the motion to dismiss the insulting words claim against the Company under Rule 12(b)(6). The Court declines supplemental jurisdiction over the remaining state law claims against the Company, namely (3) wrongful termination, (4) intentional infliction of emotional distress, (5) assault and battery, and (7) breach of contract.

### IV. *CONCLUSION*

For the foregoing reasons, the Court concludes that the motions to dismiss should be GRANTED. Therefore, the Court GRANTS defendant Howard Jacobson's motion and dismisses counts (1), (2), (6) and (7) with prejudice. The court declines jurisdiction over counts (3), (4) and (5), and dismisses these counts without prejudice. The Court also GRANTS the joint motion of Howard Jacobson and David P. Jacobson & Company and dismisses counts (1), (2) and (6) with prejudice. The court declines jurisdiction over counts (3), (4), (5) and (7) against the Company. The Court orders the Clerk to enter judgment in favor of the defendants.